UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARLLA HUDGENS, individually, and as Guardian Ad Litem for CH,<br><br>           Plaintiffs,<br><br>vs.<br><br>NEW YORK LIFE INSURANCE COMPANY, BRADLEY JOHNSON, and DOES 1-100, Inclusive,<br><br>           Defendants. | CASE NO. CV 08-08550 MMM (RCx)<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING PLAINTIFF'S MOTION TO AMEND AS MOOT |

On November 3, 2008, plaintiff Starlla Hudgens, on behalf of herself and as guardian ad litem for her minor child C.H., filed a complaint against defendants New York Life Insurance Company ("New York Life") and Bradley Johnson in San Luis Obispo Superior Court. New York Life removed the action to this court on December 24, 2008, asserting that the matter fell within the court's diversity jurisdiction under 28 U.S.C. §§ 1441(a) and 1332(a). On January 23, 2009, Hudgens filed a motion to remand and a motion for leave to amend her complaint. The court first considers whether Hudgens' motion to remand should be granted based on her original

complaint.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Allegations in Hudgens' Complaint

Hudgens' husband, Michael Dee Hudgens (the "decedent"), purchased a life insurance policy from New York Life, naming Hudgens and the couple's child as beneficiaries.[1] The policy had a five-year term beginning June 1, 2005, and a $100,000 death benefit.[2] Defendant Johnson, an agent of New York Life, sold the decedent the policy.[3] On April 27, 2007, Hudgens' husband died of "hemorrhagic shock secondary to acute hepatic failure as a result of excessive alcohol intake."[4]

Hudgens filed a claim under the policy, which New York Life denied. The insurer contended that the decedent falsely represented that he had not been counseled, treated or hospitalized for alcoholism on his policy application.[5] Hudgens asserts that Johnson instructed the decedent to leave portions of the application, including questions regarding his alcoholism, blank.[6] Johnson allegedly stated that New York Life's paramedic examiner would fill in the required information after examining the decedent.[7] According to Hudgens, Johnson represented that the "paramedic examiner would ask [the decedent] all medical questions necessary for [New York Life] to insure and guarantee that death benefits would be paid."[8] Hudgens contends that

---

[1] Complaint, ¶ 1.

[2] *Id.*, ¶ 17.

[3] *Id.*, ¶¶ 2, 12.

[4] *Id.*, ¶ 22.

[5] *Id.*, ¶ 23.

[6] *Id.*, ¶¶ 2, 12.

[7] *Id.*

[8] *Id.*, ¶ 2.

2

the examiner did not ask the decedent any questions about alcoholism.[9]

Hudgens alleges claims for breach of contract and breach of the duty of good faith and fair dealing against New York Life, and claims for intentional and negligent misrepresentation against New York Life and Johnson.

### B. New York Life's Notice of Removal

New York Life filed a notice of removal on December 24, 2008, asserting that the matter fell within the court's diversity jurisdiction under 28 U.S.C. §§ 1441(a) and 1332(a). In its notice of removal, New York Life asserts that it is a mutual corporation organized and existing under the laws of New York, with its principal place of business in New York, and that Hudgens and C.H. are citizens of California.[10] New York Life contends that the court should disregard Johnson's citizenship because he is a sham defendant who has been joined only to defeat diversity jurisdiction.[11]

## II. DISCUSSION

### A. Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a). Only state court actions that could originally have been filed in federal court may be removed. 28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction."

---

[9]*Id.*, ¶ 3.

[10]Notice of Removal, ¶ 3.

[11]*Id.*

1 *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), and *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

### B.  Whether the Case Was Properly Removed under 28 U.s.c. § 1332

"[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States"). Federal courts have jurisdiction only where there is complete diversity: the plaintiff's citizenship must be diverse from that of each named defendant. 28 U.S.C. §§ 1332(a)(1), 1332(c)(1); see *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996); see also *Cook v. AVI Casino Enters., Inc.*, No. 07-15088, 2008 WL 4890167, *3 (9th Cir. Nov. 14, 2008) (Unpub. Disp.) ("We have jurisdiction only if Cook, a resident of California, has citizenship which is diverse from that of every defendant," citing *Lewis*, 519 U.S. at 68).

Here, the amount in controversy requirement is satisfied, as Hudgens seeks damages for failure to pay the proceeds of a $100,000 insurance policy. Because New York Life has not alleged Johnson's citizenship, however, it has failed to establish the existence of complete diversity. Presumably, however, it considers him a California citizen,[12] as it asserts that the court should disregard Johnson's citizenship for purposes of removal jurisdiction because he was fraudulently joined. New York Life contends there is no possibility plaintiff can prove that Johnson is liable, and that it has named him as a defendant merely to avoid diversity jurisdiction.

---

[12] Hudgens' complaint alleges that he "works and resides" in California. (Complaint, ¶ 3.)

4

### 1. Standard Governing Fraudulent Joinder

"It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 & n. 1 (9th Cir. 1988); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). A non-diverse defendant is considered fraudulent and its citizenship may be disregarded "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state." *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe*, 811 F.2d at 1339). "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Because courts must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in [the] plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D.Cal.1998)). Thus, "[i]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants[,] the court must remand." *Id.*

### 2. Standards Governing Insurance Agents' Individual Liability under California Law

Under California law, "[a]s a general rule, insurance agents acting in the scope of their agency are not individually liable; rather, liability will rest with the insurance company." See *Reed v. Bogdonov*, No. CIV. S-06-1386 LKK/GGH, 2006 WL 2548204, * 2 (E.D. Cal. Sept. 1, 2006) (citing *Lippert v. Bailey*, 241 Cal.App.2d 376, 382 (1966)). "There are exceptions and ambiguities to th[is] [general] rule[, however]. These exceptions are not well settled under California law." *Id.* In *Macey*, 220 F.Supp.2d 1116, the Northern District of California identified two general categories of exceptions. It explained that "there are two separate (if not always completely unrelated) 'lines of exception' to the general [ ]rule – one sounding in notions of dual agency, and another, . . . sounding in notions of 'special duty.'" *Id.* at 1120. Under the "special duty" exception,

5

"the general rule changes, and a duty in an agent. . . may arise, when any one of the following circumstances can be proved: (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided. . . , (b) there is a request or inquiry by the insured for a particular type or extent of coverage. . . , or (c) the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured. . . ." *Macey*, 220 F.Supp at 1125-26 (quoting *Fitzpatrick v. Hayes*, 57 Cal.App.4th 916, 927 (1997) (first set of internal quotation marks omitted); see also *Limm v. Hahn*, No. Civ. S-06-1242 WBS DAD, 2006 WL 2401810, *2 (E.D.Cal. Aug. 18, 2006) (listing same circumstances).

Further, insurance agents may be held personally liable for intentional misrepresentation or fraud. See *McNeill v. State Farm Life Ins. Co.*, 116 Cal.App.4th 597, 603 (2004) ("Defendants finally contend that the action was properly dismissed with respect to [the agent], because only an insurer, not its agent, may liable to the insured on account of the agent's acts within the disclosed scope of employment. The authorities defendants cite reflect that this rule applies to cases involving failure to procure insurance coverage as requested or agreed upon. . . . But the present cause of action charges intentional misrepresentation, or fraud. Like other agents, an insurance company's may be personally responsible when they commit that tort" (citations omitted)); see generally *Provident Land Corp. v. Bartlett*, 72 Cal.App.2d 672, 687 (1946) ("A corporate officer or agent is personally liable for damages caused by his fraud or deceit, to the person directly injured thereby").

### 3. Whether There Is a "Non-Fanciful" Possibility That Johnson Is Individually Liable Based on the Allegations in Hudgens' Complaint

Hudgens alleges that Johnson "represented that the medical underwriting questions in the application need not be completed as the paramedic[ ] examiner would ask all questions necessary in order for the policy to be issued and delivered."[13] The complaint also alleges that the decedent "reasonably relied on [Johnson's] representations in view of the superior knowledge of [Johnson]

---

[13]Complaint, ¶ 12.

and the fiduciary and/or special relationship between the parties."[14] Essentially, the gravamen of Hudgens' allegations is that, based on Johnson's representations, the decedent believed that any information not requested by the paramedic examiner was not material to his ability to obtain coverage.

These allegations may suffice to establish Johnson's individual liability under the special duty exception because Johnson's statements could be deemed to be misrepresentations regarding the "nature, extent or scope of the coverage being offered or provided." Certainly, the court cannot conclude to a "near certainty" that Hudgens' allegations fail to state a claim against Johnson. See *Limm*, 2006 WL 2401810 ("Because the court cannot find to a near certainty that there is no cause of action against defendant Hahn for breach of a special duty in state court, Hahn is a proper defendant for the purposes of this motion," citing *Bennet v. Allstate Ins. Co.*, 753 F.Supp. 299, 302 (N.D. Cal.1990).

Although the court has not found a case directly on point, prior cases have found there was potential liability where an agent misrepresents the type of medical information that was relevant to assessing whether an insured was entitled to coverage. In *Quiroz v. Valley Forge Ins. Co.*, No. C 05-2025 SBA, 2005 WL 1806366, *2 (N.D. Cal. July 28, 2005), the court considered whether an insurance agent was fraudulently joined as a defendant. As in the present case, the plaintiff's complaint alleged that the agent defendant was an agent of the insurance company defendant. *Id.* at *1. The agent asked the plaintiff questions about his medical history and helped him fill out an application for mortgage insurance with one of the insurance company's subsidiaries. *Id.* The application was denied, and the agent then filled out an application for the plaintiff with a different subsidiary. The second application omitted certain medical information. *Id.* Plaintiff's complaint alleged that "[the agent] led [the plaintiff] to believe that any facts not on the [insurance] application, but disclosed to [the agent], were not required, and/or material to the issuance of the subject insurance Policy." *Id.* at *7. After the plaintiff was injured and became disabled, the insurance company asserted that he had made material misrepresentations on the application. *Id.*

---

[14] *Id.*, ¶ 45.

at *2. The plaintiff filed a complaint in state court, and the insurance company removed, alleging that the agent was fraudulently joined. *Id*.

Plaintiff argued that he could maintain a cause of action against the agent on various theories, including that "[the agent] assumed a special duty toward [the plaintiff] when he failed to disclose certain essential medical information on the [insurance] application and misrepresented to [the plaintiff] that the medical information was not material to [the insurance company]." *Id*. at *5. Addressing this argument, the court noted that "[i]t is well established under California law that '[a]n insurance agent has an obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured.'" *Id*. at *6 (quoting *Butcher v. Truck Ins. Exchange*, 77 Cal.App. 4th 1442, 1461 (2000)). The court concluded that "it cannot be said with certainty that California courts would refuse to recognize a cause of action against [the agent]." *Id*. at *7. In so concluding, the court relied in part on the allegation that the agent misrepresented the materiality of certain aspects of plaintiff's medical history to his ability to obtain coverage. See *id*.

Unlike the plaintiff in *Quiroz*, the decedent here did not disclose information to Johnson regarding his medical history. Rather, he disclosed the information to the paramedic examiner in response to the examiner's questions. Nevertheless, *Quiroz* suggests that Johnson's representation that no information other than that requested by the paramedic examiner was material may be sufficient to trigger individual liability under the special duty exception. Like the plaintiff in *Quiroz*, the decedent relied on the agent's superior knowledge in determining which aspects of his medical history had to be disclosed to obtain coverage. Drawing all inferences in Hudgens' favor, the complaint alleges that Johnson represented that the only medical information material to the decedent's coverage was the information requested by the paramedic examiner. Because Johnson could not be sure what questions the examiner would ask, this may have caused the decedent to fail to disclose information relevant to underwriting. As did Quiroz, who relied on the agent to determine what medical information to include in the application, the decedent relied on Johnson's representations in concluding that it was acceptable to leave the answers to certain medical questions blank. Accordingly, resolving all ambiguities in California law in

8

Hudgens' favor, Johnson may be individually liable under California law. See *id.* at *7;

More fundamentally, Hudgens' complaint alleges a cause of action against Johnson for intentional, as well as negligent, misrepresentation. Under California law, insurance agents are individually liable to those injured by their intentional misrepresentations separate and apart from the special duty exception. See *McNeill*, 116 Cal. App. 4th at 603.[15] Thus, even if Hudgens cannot state a claim against Johnson for negligent misrepresentation under the special duty exception, she can maintain an action against him for intentional misrepresentation.

In sum, the court finds there is a non-fanciful possibility that Hudgens' allegations state a claim against Johnson under California law, and Johnson is therefore not fraudulently joined. Because Johnson's presence defeats complete diversity, the court cannot exercise jurisdiction over this action. Accordingly, plaintiff's motion is granted.

---

[15]In *Cecena v. Allstate Ins. Co.*, No. C 05-03178-JF, 2005 WL 2893780, *3 (N.D. Cal. Nov. 2, 2005), the court attempted to distinguish *McNeill* in finding that an insurance agent had been fraudulently joined. Citing the general principle that "an insurance agent has no liability for acts undertaken within the scope of his or her agency," the court concluded that "[p]laintiffs' attempt to amend its [c]omplaint in order to state new causes of action against [the agent] for fraud and negligent misrepresentation [were] futile." *Id.* In a footnote, the court stated that *McNeill* was inapplicable to plaintiff's claims because the *McNeill* court had relied on the "complaint's indication of a long-term relationship between [the agent] and plaintiff." *Id.* at *3 n. 5. It is clear, however, that the *McNeill* court referenced the longstanding nature of the relationship between plaintiff and the agent in assessing whether the agent could be held liable because she was a dual agent (i.e., an agent of both the insurer and the insured). This is a separate exception to the general rule of non-liability.

In holding that insurance agents could be held individually liable for intentional misrepresentation, the *McNeill* court relied on general principles of agency and tort law, not the specific factual circumstances before it. See *McNeil*, 116 Cal.App.4th at 603 ("Like other agents, an insurance company's may be personally responsible when they commit [intentional misrepresentation"). *McNeill* has not been overruled and remains good law. Moreover, even if the court in *Cecena* correctly distinguished *McNeill* – and the court does not believe that it did – *McNeill* and *Cecena* at the very least demonstrate that California law is ambiguous as to whether an agent may be individually liable for intentional representation without application of the special duty exception. This is all that is necessary for the court to conclude that Johnson was not fraudulently joined.

### III. CONCLUSION

For the reasons stated, plaintiff's motion to remand is granted. Because the court concludes that it lack jurisdiction over the case as alleged in Hudgens' original complaint, plaintiff's motion to amend is denied as moot. The clerk is directed to remand this action to San Luis Obispo Superior Court forthwith.

DATED: March 17, 2009

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE